## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 10-CR-0072-CVE** |
| | ) |
| BRUCE GERALD BAILEY, | ) |
| | ) |
| **Defendant.** | ) |

### OPINION AND ORDER

Now before the Court is Bruce Bailey's Motion to Suppress (Dkt. # 11). Defendant Bruce

Gerald Bailey is charged in a two-count indictment (Dkt. # 4) with knowingly and intentionally

manufacturing and attempting to manufacture methamphetamine in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(c), and 846, and knowingly and intentionally possessing pseudoepehdrine with

the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1). Bailey moves

to suppress all evidence obtained and derived from a police stop that occurred on March 11, 2010.

Bailey argues that officers lacked probable cause to arrest him and, thus, that the searches of his van

and his person were illegal.

### I.

At approximately 11:15 p.m. on March 11, 2010, Tulsa Police Department (TPD) Officers

Jeff Dosser and Stephen Jones were driving southbound in separate patrol cars in the process of

responding to an armed robbery at 3700 South Memorial Drive in Tulsa, Oklahoma. A dispatcher

advised the officers that two African-American male suspects fled the scene of the robbery in a

silver van; one wore a red baseball cap, the other a red hooded sweatshirt. The dispatcher stated that

the suspects fled northbound on Memorial Drive. At the time he received the dispatch, Officer Jones

was at around 1100-1200 South Memorial Drive.  Officer Dosser was about 100 yards in front of

Jones's vehicle.  Dosser told Jones over the radio that a vehicle had passed in the other direction

(northbound) that matched the dispatcher's description of the getaway van, and he thought it was

the getaway vehicle.  It was dark, traffic on Memorial Drive was very light, and Jones concurred that

the van was the armed robbery getaway vehicle.  Dosser made a U-turn and pulled over the van;

Jones followed.  The van was stopped one to two miles from the robbery scene and within minutes

of the dispatch.

The two occupants of the vehicle were Bailey, who was driving, and Demone Bell.  Bailey

is Caucasian, and there is no evidence showing that he was wearing a red baseball cap while driving

the van.  The van is brown.  However, after pulling over the van and seeing that it was brown rather

than silver, Jones still believed that it could be the getaway vehicle because of its proximity (in time

and distance) to the robbery scene.  He also believed that dispatchers' descriptions of vehicle color

are often inaccurate because they may come from excited witnesses.  He also thought it was possible

that Bailey could be a lookout or getaway driver and that other suspects could have been hiding in

the van.  The van had tinted windows and curtains, so the officers could not see inside.

Dosser drew his gun and ordered Bailey out of the van.  Jones provided backup.  Bailey was

handcuffed at the back of Dosser's patrol car.  Dosser then ordered Bell out of the van and Bell was

handcuffed at the back of Dosser's patrol car.  Jones and Oklahoma State Trooper West, who had

arrived at the scene, announced for any other occupants to exit the van.  There was no response.

Dosser maintained control of Bailey and Bell while Jones and West approached the van.  Jones

looked in the front driver side area and did not see any other people.  When he looked in the front

passenger side area, Jones saw a methamphetamine pipe on the passenger floorboard and a spoon

and white powder on the center console.  Dosser still could not see if anyone was in the rear of the van, so he opened the sliding passenger side door (behind the front passenger door).  There was a lot of debris in the van, and Jones could see the back seat but could not see behind it.  Jones crawled in the van and found no other persons inside.

Jones then returned to the area behind Dosser's vehicle.  Jones patted down Bell while Dosser patted down Bailey.  Jones heard Bailey say to Dosser "I have a point in my pocket."  Dosser found a syringe in Bailey's pocket.  Jones found money and methamphetamine on Bell.  Bailey was placed under arrest for possession of methamphetamine and paraphernalia.  Jones testified that, had the officers not found methamphetamine and paraphernalia in the van and on Bailey's person, the officers would have let them go after finding no evidence connecting them to the robbery.

Jones and West then searched the van.  They found the methamphetamine pipe, spoon, and white powder Jones had previously seen in the front passenger area.  Jones and West also found a funnel, a glass mason jar with residue on it, and a box with a pop bottle that Jones recognized as a one pot methamphetamine cook.

Jones then <u>Mirandized</u> Bailey, who continued to speak while Jones read him his rights. Bailey stated that the "stuff" in the back of the van was an old methamphetamine laboratory.[1]  Bailey was also questioned later at the police station.

---

[1]     Bailey does not contend that this statement should be suppressed for reasons other than that it was the fruit of an illegal search and seizure.

## II.

Bailey argues that the items found in the van and on his person and his statement regarding the syringe should be suppressed because they are the fruits of an arrest that was not supported by probable cause. Bailey argues that he was under arrest almost immediately after he was pulled over and, thus, that the officers needed probable cause to stop the van and detain him. The government argues that the stop was an investigative detention supported by the requisite articulable suspicion.

It is undisputed that law enforcement officers did not have a warrant when they searched Bailey's person and vehicle on March 11, 2010. "The stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." United States v. Walker, 933 F.2d 812, 815 (10th Cir. 1991). Further, the interior of a car is subject to Fourth Amendment protection, and police's intrusion into that space is a search. See New York v. Class, 475 U.S. 106, 114-15 (1986). Searches and seizures conducted without a warrant are per se unreasonable under the Fourth Amendment, subject to a few exceptions. Katz v. United States, 389 U.S. 347, 357 (1967). The government bears the burden of establishing an exception to the warrant requirement. United States v. Jeffers, 342 U.S. 48, 51 (1951).

The nature of the encounter between police and a defendant dictates the level of cause required to justify a search or seizure. A formal arrest or a seizure that resembles a formal arrest must be supported by probable cause. United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir. 1993) (citing Michigan v. Summers, 452 U.S. 692, 700 (1981)). "Recognizing that police officers must often act before probable cause can be determined, however, the Supreme Court adopted an intermediate approach" in Terry v. Ohio, 392 U.S. 1 (1980). Perdue, 8 F.3d at 1461. A Terry stop must be supported by a "reasonable, articulable suspicion that the detainee has been, is, or is about

to be engaged in criminal activity." United States v. Elkins, 70 F.3d 81, 83 (10th Cir. 1995).

"Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the

officer's actions in light of the facts and circumstances confronting him at the time,' and not on the

officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472

U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

The initial stop was justified. Jones and Dosser received information that two suspects had

fled an armed robbery at 3700 South Memorial Drive in a van. Five minutes later, at around 1100

South Memorial Drive, they observed a van traveling north on Memorial Drive. Based on specific

information, including the fact that the van was one of a few vehicles on Memorial Drive and the

proximity of the van (in time and location) to the robbery scene, Jones had a reasonable, articulable

suspicion that the van contained the armed robbery suspects.[2] Jones's realization that the van was

brown rather than silver did not render his continued suspicion unreasonable; he reasonably believed

that the dispatcher's description of the vehicle color could have been in error. Likewise, the fact that

the driver was Caucasian rather than African-American does not negate the fact that others could

have been hiding in the van.

A Terry stop, even if initially justified, must be "limited in scope to the justification for the

stop." Perdue, 8 F.3d at 1461. If the encounter exceeds the limits of a Terry stop, it becomes an

arrest that must be supported by probable cause. See United States v. White, 584 F.3d 935, 952

(10th Cir. 2009). The government has the burden to demonstrate that the seizure was sufficiently

---

[2]     "'A mistaken premise can furnish grounds for a Terry stop, if the officers do not know that
it is mistaken and are reasonable in acting upon it.'" United States v. Shareef, 100 F.3d 1491,
1505 (10th Cir. 1996) (quoting United States v. Ornelas-Ledesma, 16 F.3d 714, 718 (7th Cir.
1994)). The fact that Bailey and Bell were not, in fact, the armed robbers is immaterial.

limited in scope and duration.  Florida v. Royer, 460 U.S. 491, 500 (1983).  Terry stops must

generally be nonintrusive.  Perdue, 8 F.3d at 1462.  However, law enforcement officers are

"authorized to take such steps as [are] reasonably necessary to protect their personal safety and to

maintain the status quo during the course of the stop."  United States v. Hensley, 469 U.S. 221, 235

(1985).

The Court must determine whether the officers' conduct in this case exceeded the

permissible bounds of a Terry stop.  The officers, with guns drawn and lights on, ordered Bailey and

Bell out of the van and handcuffed and detained them at the back of the van.  "[T]he law is settled

that the police may, in connection with an investigatory stop, order an individual out of his vehicle."

United States v. Merritt, 695 F.2d 1263, 1273 (10th Cir. 1982).  Further, the Tenth Circuit has held

that officers' use of firearms during a Terry stop may be reasonable where the officers reasonably

believe that firearms are necessary for their protection.  E.g., id. ("the police were also justified in

holding shotguns on the suspects during the course of the stop"); see also United States v. Merkley,

988 F.2d 1062, 1064 (10th Cir. 1993).  The use of handcuffs during a Terry stop is reasonable where

it is necessary for safety reasons, particularly in order to prevent a suspect from obtaining weapons

in a vehicle or on his or her person.  See United States v. Neff, 300 F.3d 1217, 1221 (10th Cir. 2002)

(finding the use of handcuffs reasonable where officers had received a report that the defendant was

armed with a particularly dangerous weapon); see also Merkley, 988 F.2d at 1064 (finding the use

of handcuffs reasonable where the officers were informed that the detainee had threatened to kill

someone and observed him acting violently); cf. Perdue, 8 F.3d at 1463 (holding that officers were

reasonable in ordering suspect to lie on the ground, stating "this holding is consistent with the recent trend allowing police to use handcuffs or place suspects on the ground during a <u>Terry</u> stop").[3]

Based on the fact that Dosser and Jones believed that Bailey and Bell were or were with armed robbery suspects, it was reasonable for them to believe that Bailey and Bell were armed and dangerous.  Therefore, it was reasonable for Dosser to draw his gun when ordering Bailey and Bell out of the van, and it was reasonable to handcuff them while the van was cleared so that they could not obtain weapons on their persons or from the van.  Cf. <u>Merritt</u>, 695 F.2d at 1274 ("it would seem that until the truck was searched . . . there remained the possibility that the defendant or one of the other suspects might attempt to escape from where they were detained at the back of the truck and seize a weapon hidden in the truck").  There was a further need to restrain Bailey and Bell because the officers did not know if there were other people inside the van.  The officers could not see inside the van, and it was reasonable for them to take precautions against the possibility that there were people or weapons inside.  The Court finds that the officers' conduct was reasonable and appropriate under the circumstances of this particular <u>Terry</u> stop.

Next, the Court must determine whether the officers were justified in conducting a preliminary search of the van and patting down Bailey.  "Officers can conduct a protective search of a vehicle's passenger compartment for weapons during an investigative detention when officers have a reasonable belief that a suspect poses a danger." <u>United States v. Dennison</u>, 410 F.3d 1203,

---

[3]     Thus, Bailey's contention that an arrest necessarily occurs once a show of official authority or force is used is without merit under the circumstances of this particular detention.  <u>Cf. Merritt</u>, 695 F.2d at 1274 ("it seems to us to focus the analysis [on whether the use of force in a stop became so great as to render it an arrest] diverts attention from the court's true concern in any Fourth Amendment case - whether the police conduct, in light of all the circumstances, was reasonable").

7

1210 (10th Cir. 2005); see also Michigan v. Long, 463 U.S. 1032, 1049-50 (1983).  Additionally,

an officer "may pat-down a suspect if the facts available to the officer would 'warrant a man of

reasonable caution to believe that a frisk would be necessary to protect himself.'" United States v.

Manjarrez, 348 F.3d 881, 886 (10th Cir. 2003) (quoting United States v. McRae, 81 F.3d 1528, 1536

(10th Cir. 1996)).  The protective search of the van and the pat-down of Bailey were reasonable for

the same reasons the use of firearms and handcuffs was reasonable: the officers reasonably believed

they were necessary for officer safety.

Bailey did not argue that the officers lacked probable cause to arrest him once the syringe,

methamphetamine pipe, and spoon and residue were found.  The Court finds that, at that time,

officers had probable cause to arrest Bailey for methamphetamine and paraphernalia possession.

Further, the full search of the van was justified.  "[W]hen [police] officers have probable cause to

believe that an automobile contains contraband, the Fourth Amendment does not require them to

obtain a warrant prior to searching the [vehicle] for and seizing the contraband." Florida v. White,

526 U.S. 559, 563 (1999).  In this case, the officers had probable cause to believe that the van

contained contraband because they had already found a methamphetamine pipe, white powder, and

a metal spoon with residue on it in the vehicle.

**IT IS THEREFORE ORDERED** that Bruce Bailey's Motion to Suppress (Dkt. # 11) is

**denied**.

**IT IS SO ORDERED** this 11th day of June, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

8